UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/11/2023
```

---

CHEIKHAOUI,

                                    Plaintiff,

    -against-

                                                    No. 22 Civ 08855 (CM)

CITY OF NEW YORK, et al.,

                                    Defendants.

---

### DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT APPLE'S MOTION TO DISMISS AND DEFENDANTS OMINSCIENT INVESTIGATIONS CORP.'S AND BRIAN PLUNKETT'S MOTIONS TO DISMISS

McMahon, J.:

Plaintiff, Kamal Cheikhaoui ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 1983 and state law against Defendants the City of New York, Apple, Inc., Omniscient Investigations Corp. d/b/a OIC Security, Lieutenant Nakwan Brathwaite, Police Officer Russel Bast, Police Officer Yelena Ast, Police Officer Brandon Lau, Police Officer Rawdi Ali, Police Officer Salvatore Provenzano and Brian Plunkett (collectively, "Defendants").

Plaintiff alleges constitutional claims under Section 1983 against the City of New York and Defendant Officers for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights. Plaintiff also asserts state law claims for (1) assault and battery by Defendant Plunkett and the Defendant Officers; (2) false arrest, false imprisonment, and malicious prosecution by the Defendant Officers; (3) abuse of process and malicious prosecution by Defendants Apple, OIC Security and Plunkett; (4) negligent screening, hiring, training, supervision and retention by Defendants City of New York, Apple, and OIC Security; (5) negligence against all Defendants;

1

and (6) intentional and negligent infliction of emotional distress against all Defendants. Plaintiff contends that these violations stem from a series of unlawful actions that occurred following his October 19, 2021 visit to the Apple Store located at 1981 Broadway, New York, NY.

Defendants Apple, OIC Security and Brian Plunkett move to dismiss the claims against them in Plaintiff's first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), asserting that Plaintiff's claims against them fail to state a cause of action. In addition, Plaintiff moves for leave to file a second amended complaint pursuant to Fed. R. Civ. P. 15.

For the following reasons, Plaintiff is granted leave to amend his complaint, Apple's motion to dismiss is granted in part and denied in part, and the motion to dismiss by OIC Security and Plunkett granted in part and denied in part.

BACKGROUND

**I.    Leave to Amend the Complaint**

As an initial matter, the Court addresses Plaintiff's motion for leave to file a Second Amended Complaint ("SAC").

On August 14, 2023, Plaintiff filed a motion for leave to file a SAC. Dkt. No. 53. Plaintiff noted that the purpose of this amendment was solely to join Police Officer Salvatore Provenzano as a party and to assert the same claims against him as asserted against the Defendant Officers. Dkt. No. 54 at 1.

In making his motion, Plaintiff emphasized that no new facts or claims were asserted in the SAC against the existing Defendants, "so as not to disturb the pending motions to dismiss" filed by Apple and OIC Security and Plunkett. *Id.* at 1. In response to Plaintiff's motion, Defendants OIC Security, Plunkett, and Apple filed oppositions in which they stated that they do not object to Plaintiff's request to amend the complaint, as long as their motions to dismiss the first amended complaint ("FAC") are deemed motions to dismiss the SAC. Dkt. No. 57 at 2; Dkt. No. 58 at 2. In

2

addition, the City Defendants (the City of New York and Defendant Officers) do not object to Plaintiff's motion. Dkt. No. 59 at 1.

Fed. R. Civ. P. 15(a) states that "[t]he court should freely give leave [to amend] when justice so requires." Under this liberal standard, leave is generally given as long as (1) the party seeking the amendment has not unduly delayed, (2) that party is not acting in bad faith or with a dilatory motive, (3) the opposing party will not be unduly prejudiced by the amendment, and (4) the amendment is not futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The moving party "must explain any delay" but the party opposing the amendment bears the burden of showing bad faith, prejudice, or futility. *See United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F.Supp.3d 759, 766 (S.D.N.Y. 2018) (citing cases).

In addition, "Where a plaintiff seeks to amend [her] complaint while a motion to dismiss is pending, a court 'may either deny the pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading.'" *Moore v. Experian*, 2023 WL 3005746, at *1 (S.D.N.Y. Mar. 31, 2023)) (citing *Cotto v. Fed. Nat'l Mortg. Ass'n,* 2021 WL 4340668, at *4 (S.D.N.Y. Sept. 22, 2021)).

Plaintiff states that the identity of Provenzano only came to light shortly prior to his arraignment on July 19, 2023. Dkt. No. at 6. Therefore, there has been no undue delay. As to the remaining factors, none of the Defendants oppose Plaintiff's motion to amend. Therefore, Plaintiff's motion is GRANTED.

Moreover, in light of the limited amendment to the FAC, solely to identify a "John Doe" Officer, and that no new facts or claims were asserted in the SAC against the existing Defendants, the court will consider the merits of the motions to dismiss filed by Apple and OIC Security/Plunkett as though they have been directed to the SAC.

## II. Parties

Plaintiff Kamal Cheikhaoui is a resident of the State of New York. Second Amended Complaint ("SAC," Dkt. No. 55-1) ¶ 15.

Defendants Lieutenant Brathwaite, Officer Bast, Officer Ast, Officer Lau, Officer Ali, and Officer Salvatore Provenzano (collectively, the "Defendant Officers") are members of the New York Police Department ("NYPD"). *Id.* ¶ 18.

Defendant City of New York is a municipal corporation that maintains the New York City Police Department. *Id.* ¶ 16-17.

Defendant Apple is organized and existing by virtue of the laws of the State of California. *Id.* ¶ 23. At all times alleged in the SAC, Apple operated, maintained, supervised, and controlled the Apple Store located at 1981 Broadway, New York, NY. *Id.* ¶ 39.

Defendant Omniscient Investigations Corp. d/b/a OIC Security ("OIC Security") is organized and existing by virtue of the laws of the State of New York. *Id.* ¶ 25. At all times alleged in the SAC, Apple retained OIC Security to provide security services at the Apple Store located at 1981 Broadway, New York, NY. *Id.* ¶ 41.

Defendant Brian Plunkett is a resident of the State of New York. Defendant Plunket was employed by OIC Security as a security guard at the Apple Store located at 1981 Broadway, New York, NY at all times alleged in the SAC. *Id.* ¶¶ 26-27, 29.

## III. Factual Allegations

On the evening of October 19, 2021, Plaintiff was inside the Apple Store located at 1981 Broadway, New York, NY (the "Apple Store"). SAC ¶ 42. Defendant Plunkett, a security guard, grabbed Plaintiff, removed his bag and threw it to the ground, and ripped Plaintiff's jacket off his body. *Id.* Plaintiff alleges that Defendant Plunkett had no reason to do any of this, and he did not suspect Plaintiff of shoplifting. *Id.*

4

Plaintiff notes that he had had a prior encounter with Defendant Plunkett in the Apple store a few months earlier. *Id.* ¶ 43. Plaintiff told Plunkett that he was acting in a rude and menacing way toward a woman who was standing in line near him. He asked Plunkett, calmly, to stop. *Id.* Plunkett began to address Plaintiff in an aggressive manner, at which point the manager and assistant manager of the Apple Store intervened and asked Plaintiff to return at a later time. *Id.*

On this occasion, Defendant Plunkett, together with another employee at the Apple Store, called the police and reported that Plaintiff was being verbally abusive to staff and refusing to leave the store. *Id.* ¶ 44. When the Defendant Officers arrived at the store, Plunkett and the other Apple employee repeated this story. *Id.* ¶ 45.

Officers Ast and Ali first arrived at the scene. They immediately engaged Plaintiff in a hostile and antagonizing manner. *Id.* at ¶ 46. Plaintiff told the Defendant Officers that he was being harassed, assaulted, and battered by Defendant Plunkett and wanted to file a police report against him. *Id.* However, Officers Ast and Ali refused to take Plaintiff's report. *Id.* When the remaining Defendant Officers arrived at the scene, Plaintiff tried telling Officer Brathwaite that he wanted to file a report, but was told no reports would be taken and he should leave the store. *Id.* Plaintiff responded that he would be filing a complaint with the Attorney General's Office against Defendants Brathwaite, Ast, and Ali, for refusing to take his report. *Id.* ¶ 46. He then picked up his belongings and began to leave the store. *Id.* Plaintiff alleges that the Defendant Officers refused to take Plaintiffs report because Defendant Plunkett was known to them to be and/or identified himself as a retired NYPD police officer. *Id.* ¶ 47.

As he was walking out of the store with the Defendant Officers, one of the Defendant Officers punched Plaintiff in the head, and he fell to the floor. *Id.* ¶ 48. Then one of the Defendant Officers, believed by Plaintiff to be Defendant Bast, pepper sprayed Plaintiff in his face. *Id.*

Defendant Ast and other Defendant Officers then jumped on top of Plaintiff and handcuffed him. *Id.* Plaintiff alleges that there was no justifiable cause for this use of force. *Id.* Plaintiff was escorted out of the Apple Store and taken to a police vehicle, at which time one of the Defendant Officers used additional excessive force on him by grabbing him forcefully in the back of his head. *Id.*

Plaintiff was arrested by the Defendant Officers and taken to the 20th Precinct for processing. *Id.* ¶ 49. The Defendant Officers did not promptly decontaminate Plaintiff from the pepper spray. *Id.* Plaintiff was told to use the toilet at the precinct to wash the pepper spray off of him. When that was unsuccessful, paramedics were called to the precinct to decontaminate Plaintiff. They too were unsuccessful. *Id.* Approximately two hours later, Plaintiff was taken to the emergency room for decontamination. *Id.* ¶ 50. He was also examined for other reported injuries, including pain, weakness, numbness and paresthesia in extremities. *Id.*

Plaintiff alleges that the Defendant Officers falsely detained, arrested, imprisoned, and maliciously prosecuted Plaintiff on contrived and fabricated charges of resisting arrest and trespass. *Id.* ¶ 51. On or about October 20, 2021, Plaintiff was arraigned; he was imprisoned until his arraignment. *Id.* ¶¶ 53-4. The charges of resisting arrest and trespass were dismissed on November 29, 2021. *Id.* ¶ 56.

### IV.   Procedural Background

Plaintiff initiated this action by filing a complaint on October 17, 2022. *See* Dkt. No. 1. Defendant Apple filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on November 14, 2022. Dkt. No. 28. Plaintiff filed the FAC on November 28, 2022, together with its opposition to Apple's motion to dismiss. *See* Dkt. Nos. 35, 36.

In its Reply, Defendant Apple stated that Plaintiff's Amended Complaint did not cure the deficiencies in his allegations and so both the original and FAC should be dismissed. Dkt. No. 40.

On December 5, 2022, Defendants OIC Security and Brian Plunkett filed a motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 38.

On January 9, 2023, the City of New York requested a stay of this matter "pending the resolution of an open investigation by the New York County District Attorney's Office" into the underlying facts of this matter. Dkt. No. 48. The court granted a 90-day stay. Dkt. No. 49. On May 22, 2023, the City filed its Answer to the FAC. Dkt. No. 52.

On August 14, 2023, Plaintiff filed its motion for leave to amend the FAC. Dkt. No. 53.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, No. 20-cv-4313 (CM), 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). When plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Federal Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* at 545.

7

## DISCUSSION

### I.    Apple and OIC Security Are Liable for Defendant Plunkett's Actions Under Respondeat Superior

As to certain of his claims,[1] Plaintiff seeks to hold Defendants Apple and OIC Security liable for the actions of Defendant Plunkett under a theory of respondeat superior. SAC ¶ 137. ("Inasmuch as defendant Plunkett and the defendant officers were acting, for upon, and/or in furtherance of the business of their employers and/or within the scope of their employment, defendants City of New York, Apple, Inc., and OIC Security are liable under the doctrine of *respondeat superior* for the tortious actions of the same.")

"To state claim for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014).

The SAC asserts that "defendant OIC was hired by defendant Apple as an independent contractor to provide security services at Apple's stores," that "OIC Security operated, maintained, supervised, and controlled the security personnel at the Apple Store," and that Defendant Plunkett was "employed as a security guard at the Apple store." SAC ¶ 1, 27, 32, 41. This suggests that Plunkett was an employee of OIC Security. However, the SAC states in various places that Plunkett was: an employee of Apple, an employee of OIC Security, an independent contractor of Apple, and an independent contractor of OIC Security. SAC ¶¶ 28-31. In addition, the SAC asserts that Plunkett was "acting in the course of his employment with defendant(s) Apple *and/or* OIC Security." *Id.* ¶ 36 (emphasis added).

---

[1]    For abuse of process and malicious prosecution (Count III), negligence (Count V), and intentional and negligent infliction of emotional distress (Count VI).

"Generally, an employer who hires an independent contractor, as distinguished from an employee, is not liable for that individual's negligent or tortious acts." *Phillips v. Uber Techs., Inc.*, 2017 WL 2782036, at *4 (S.D.N.Y. June 14, 2017) (citing *Sanabria v. Aguero-Borges*, 986 N.Y.S.2d 553, 554 (N.Y. 2014). "Control of the method and means by which the work is to be done is the critical factor in determining whether one is an independent contractor or an employee for purposes of tort liability." *Sanabria*, 986 N.Y.S.2d at 554. "Factors relevant to assessing control include whether a worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." *Id.* at 555 (citing *Hernandez v. Chefs Diet Delivery, LLC*, 915 N.Y.S.2d 623 (N.Y. App. Div. 2011)).

"Under New York case law, the determination of whether an individual should be classified as an employee or independent contractor is fact intensive, and is premature at the Motion to Dismiss, pre-answer stage." *Uber Techs*, 2017 WL 2782036, at *4. It will come out in discovery whether Plunkett was employed by OIC Security (as seems most likely) or by Apple, and whether he was an employee or an independent contractor. "The extent of this control is a matter which should be explored in discovery and is not an issue which is amenable to a motion to dismiss." *Connor v. Pier Sixty, LLC*, 870 N.Y.S.2d 899, 901 (N.Y. Sup. Ct. 2009).

Next, both Apple and OIC Security argue that the SAC does not adequately allege that Plunkett was acting within the scope of his employment.

The SAC alleges that Plunkett's actions occurred while he was on duty as a security guard at the Apple Store. SAC ¶¶ 42, 43, 44. This creates a presumption that his actions were in the course of his employment. Moreover, Plunkett's actions in grabbing Plaintiff, removing his bag, and ripping Plaintiff's jacket off of his body are also considered within the scope of his

employment. *Id.* ¶ 42. An intentional tort, such as assault or battery, is considered within the scope

of employment when the employee who committed the tortious act was authorized to use force by

his or her job duties. *Smith v. Brown*, 296 F. Supp. 3d 648, 655 (S.D.N.Y. 2017). For example,

"When businesses hire security guards or bouncers to maintain order, the physical force used by

those bouncers may be within the scope of their employment." *Fauntlerov v. EMM Grp. Holdings*

*LLC*, 20 N.Y.S.3d 22, 22 (App. Div. 2015).

As there is nothing pleaded in the SAC to suggest that Plunkett was acting outside of the

scope of his employment when taking the actions alleged, Plaintiff has adequately alleged Apple

and OIC Security's liability under a theory of *respondeat superior*.

Apple's and OIC Security's motions to dismiss the claims based on *respondeat superior* is

DENIED.

## II.   Defendant Plunkett's Motion to Dismiss Plaintiff's Assault and Battery Claim is Denied

Defendant Plunkett asserts that Plaintiff has failed to state a cause of action against him for

assault and battery.

Under New York law, "A civil assault 'is an intentional placing of another person in fear

of imminent harmful or offensive contact,'" whereas a "civil battery 'is an intentional wrongful

physical contact with another person without consent.'" *Charkhy v. Altman*, 252 A.D.2d 413, 414

(1st Dep't 1998) (quoting *United Natl Ins. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d

Cir. 1993)).

One commits a civil battery when (1) there was bodily contact between the plaintiff and

the defendant, (2) the contact was offensive, and (3) the defendant intended to make the contact

without the plaintiff's consent. *Bastein v. Sotto*, 299 A.D.2d 432, 433 (2d Dep't 2002). The plaintiff

need not allege an intent to harm, rather a plaintiff need only allege the act causing the bodily

contact was done with the intent to make the contact, and the contact was offensive. *See Messina v. Matarasso*, 284 A.D.2d 32, 35–36 (1st Dep't 2001). The bodily contact may be direct or indirect – "[M]aking contact with something connected with the plaintiff's person [also] suffices." *Waters v. Town Sports Intern. Holdings, Inc.*, No. 151760/14, 2014 WL 3765564, at *1 (N.Y. Sup. Ct. July 31, 2014).

Plaintiff adequately states a claim for battery against Plunkett. Plaintiff alleges that Plunkett "grabbed Plaintiff's person, removed his bag from him and threw it to the ground, and then ripped Plaintiff's jacket off his body." SAC ¶ 1, 42. The SAC also states that, "Said contact was done intentionally by defendant Plunkett and without Plaintiff's consent or legal justification." *Id.* ¶ 96. Drawing all reasonable inferences in favor of Plaintiff, it can be inferred that this contact was offensive to Plaintiff, considering that these actions preceded Plaintiff's arrest and Plaintiff found it worthy to file suit over.

One commits a civil assault if s/he intentionally acts in some way that places another in reasonable apprehension of imminent harmful or offensive contact – *i.e.*, in reasonable apprehension of an imminent battery. *See Gould v. Rempel*, 99 A.D.3d 759, 760 (2d Dep't 2012). Although physical contact is not an element of assault, there must be some overt menacing act or gesture. *Id.* at 760.

Plaintiff also adequately states a claim for assault against Plunkett. As noted, Plaintiff asserts that "[Plunkett's] contact was done intentionally by defendant Plunkett." SAC ¶ 97. The SAC further states that "Plunkett's acts against Plaintiff created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person." *Id.* ¶ 99. It can also be inferred that Plaintiff was apprehensive about Plunkett's actions; having a security guard reach

first to grab a person, and thereafter to grab his belongings, could cause a reasonable person to be apprehensive of imminent offensive contact.

Defendant Plunkett cites *Oakley v. Dolan*, 980 F.3d 279, 282 (2d Cir. 2020) to argue that "a property owner has the right to use reasonable force to eject a trespasser from its premises." He states that, as Plaintiff failed to allege that Plunkett had an "intent to injure" or that he used "unreasonable force," the property owner privilege applies.

However, nothing in the SAC suggests that Plaintiff was a trespasser. In fact, Plaintiff explicitly pleads that he was a "lawful invitee within the Apple Store." SAC ¶ 42. While Defendant Plunkett in his Reply cites *Noonan v. Luther*, 206 N.Y. 105, 108, 99 N.E. 178 (1912) for the proposition that even a lawful invitee can have their license withdrawn, giving the property owner "the right to use reasonable force to eject" the invitee, this too is not applicable, at least on this motion to dismiss. The *Noonan* court held that the property owner could only eject the plaintiff "if, after having afforded her a reasonable opportunity to leave, or while she was behaving in a disorderly manner she refused to go." *Id.* Here, the SAC alleges that Plunkett "*falsely report[ed]* that Plaintiff was being verbally abusive to staff and refusing to leave the store." SAC ¶¶ 44, 45 (emphasis added). Reading the SAC in the light most favorable to Plaintiff and accepting all well-pleaded factual allegations as true, there is no suggestion that Plunkett had the right to use reasonable force to eject Plaintiff. If the facts turn out to be otherwise we will deal with the argument; but not on a motion to dismiss.

Defendant Plunkett's motion to dismiss Plaintiff's assault and battery claims against him is, therefore, DENIED.

**III.    Defendants Apple, OIC Security's, and Plunkett's Motion to Dismiss Plaintiff's Abuse of Process Claim is Granted and Malicious Prosecution Claim is Denied**

Defendants Apple, OIC Security and Plunkett move to dismiss Plaintiff's abuse of process and malicious prosecution claim against them. Plaintiff's abuse of process claim is dismissed as to Apple, OIC Security and Plunkett but Plaintiff has adequately alleged a malicious prosecution claim against these Defendants.

i. *Plaintiff's Abuse of Process Claim is Dismissed*

"In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of N.Y.*, 331 F.3d 63, 76-77 (2d Cir. 2003) (internal citations and quotation marks omitted).

With regard to the final element, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77. "A malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 469 N.E.2d 1324 (1984). "As examples of the types of collateral objectives covered by this tort, the New York Court of Appeals has cited the infliction of economic harm, extortion, blackmail and retribution." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) (quoting *Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 404, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975)).

The SAC fails to allege facts that would support the pursuit of a collateral objective with respect to any of the three moving Defendants. Plaintiff alleges that, "Defendant Plunkett and/or others working at or for the benefit of defendants Apple and/or OIC Security did give false and/or

misleading statements to the police with the collateral objective of covering up and diverting attention from their own illegal conduct toward Plaintiff." SAC ¶ 112. In his briefing, Plaintiff explains that this illegal conduct was Plunkett's grabbing Plaintiff, removing his bag from him, and ripping Plaintiff's jacket off his body – *i.e.*, the alleged assault. *Id.* ¶ 1; Dkt. No. 44 at 4.

However, New York courts have explicitly held that an abuse of process claim does not lie if the plaintiff merely alleges that defendants were "motivated by their desire to cover up their misdeeds, but not that defendants had a purpose other than to prosecute [plaintiff]." *Crews v. Cty. of Nassau*, 2007 WL 4591325 (E.D.N.Y. Dec. 27, 2007); *see also Dotson v. Farrugia*, 2012 WL 996997, *8 (S.D.N.Y. Mar. 26, 2012); *Pierre-Antoine v. City of N.Y.*, 2006 WL 1292076 (S.D.N.Y. May 9, 2006). Therefore, the allegations of the SAC concerning motive, which are limited to covering up the Defendants' own misdeeds, are insufficient to give rise to any probability that Defendants Apple, OIC Security, or Plunkett had the requisite improper purpose.

The motions of Defendants Apple, OIC Security and Plunkett to dismiss Plaintiff's abuse of process claim is GRANTED.

### ii. *Defendant's Motions to Dismiss the Malicious Prosecution Claim is Denied*

Malicious prosecution under New York law requires "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003).

With respect to the first factor, "New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant." *Gilman v. Marsh & McLennan Companies, Inc.*, 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012), *aff'd*, 654 F. App'x 16 (2d Cir. 2016). Therefore, "Generally, a civilian defendant who merely furnishes

14

information to law enforcement authorities who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed will not be held liable for malicious prosecution." *Delince v. City of New York*, 2011 WL 666347, at \*5 (S.D.N.Y. Feb. 7, 2011). However, "a person who does not file a complaint may be found to have initiated a proceeding for malicious prosecution purposes where that person induces or persuades a prosecutor to act . . . this usually arises in situations where the person has induced prosecution by providing false information to the authorities." *Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, 2004 WL 2290499, at \*5 n. 8 (S.D.N.Y. Oct. 8, 2004).

Here, Plaintiff asserts that he adequately alleged malicious prosecution by alleging that Defendants Apple, OIC Security and Plunkett gave false information to the Defendant Officers. Specifically, the SAC states that "Defendant Plunkett and/or presently unknown employee(s) of defendant(s) Apple and/or OIC Security then called the police, falsely reporting that Plaintiff was being verbally abusive to staff and refusing to leave the store." SAC ¶ 45. In addition, it states that, upon the arrival of the police officers, Defendant Plunkett and/or other employees "falsely repeated that Plaintiff was being verbally abusive to staff and refusing to leave the store." *Id.* ¶ 46. Finally, the SAC states that Defendant Plunkett and/or other employees "knowingly submitted false and/or misleading official and/or sworn statements in order to effectuate the arrest of Plaintiff on false charges . . . and in order to initiate and continue the prosecution of Plaintiff on false charges." *Id.* ¶ 59-60.

Defendants argue that the SAC does not sufficiently link their allegedly false statements to Plaintiff's arrest. After Defendants are alleged to have falsely reported that Plaintiff was being verbally abusive and refusing to leave the store, Officer Brathwaite simply told Plaintiff to leave the store. *Id.* ¶ 46. After this, Plaintiff responded that he would be filing a complaint with the

Attorney General's Office and then picked up his belongings and began to leave the store. *Id.* Only after the Defendant Officers allegedly attacked Plaintiff, does the SAC state that Plaintiff was handcuffed, taken to a police vehicle, arrested and taken to the Precinct for processing. *Id.* ¶ 48-49.

However, reading the complaint in the light most favorable to Plaintiff, it can be inferred that the determination to arrest Plaintiff rested, at least in part, on Defendant's alleged false report. Moreover, while the SAC does not reference the facts alleged in the criminal proceeding against Plaintiff, it does note that Plaintiff was arraigned on charges of resisting arrest and trespass. *Id.* ¶ 53.

Next, Defendants assert that Plaintiff has failed to allege facts to support the fourth element of his malicious prosecution claim – malice. "The 'actual malice' element of a malicious prosecution action does not require a plaintiff to prove that the defendant was motivated by spite or hatred . . . Rather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502–03, 377 N.E.2d 975 (1978). The submission of falsified evidence satisfies the malice element. *Buari v. City of New York*, 530 F. Supp. 3d 356, 388 (S.D.N.Y. 2021); *Torres v. Jones*, 26 N.Y.3d 742, 762, 27 N.Y.S.3d 468, 47 N.E.3d 747 (2016).

The SAC states that Defendant Plunkett and/or others working for OIC Security or Apple gave "false and/or misleading statements to the police with the collateral objective of covering up and diverting attention from their own illegal conduct toward Plaintiff." SAC ¶ 112. Therefore, Plaintiff's allegation of falsification of evidence is also sufficient to satisfy the malice requirement.

Defendants Apple, OIC Security, and Plunkett's motion to dismiss Plaintiff's malicious prosecution claim is DENIED.

**IV.    Defendants Apple, OIC Security's, and Defendant Plunkett's Motion to Dismiss Plaintiff's Negligence Claim is Granted**

"To state a claim for negligence, under New York [l]aw a plaintiff must [allege]: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'" *Edrei v. City of New York*, 254 F. Supp. 3d 565, 582 (S.D.N.Y. 2017) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)).

The SAC pleads that "the negligence of each defendant . . . was the proximate cause of the injuries and damages suffered by Plaintiff." SAC ¶ 135. However, the SAC alleges that Plaintiff's injuries and damages were caused by the commission of various intentional torts -- assault, battery, abuse of process and malicious prosecution. Specifically, that Defendant Plunkett grabbed Plaintiff's person and belongings and made a false report about Plaintiff to the Defendant Officers. The SAC does not allege that any negligent acts on the part of Defendants caused Plaintiff's injuries.

Moreover, liability for negligence may not be imposed in the absence of a special duty. *R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 516 (2d Cir. 2020). The SAC states that "each defendant . . . owed Plaintiff a duty of care, including the duty to prevent him from being assaulted, battered, falsely arrested, falsely charged and maliciously prosecuted." SAC ¶ 134. However, beyond this sole statement, the SAC pleads no facts to support why Apple, OIC Security or Defendant Plunkett owed Plaintiff such a duty. This single conclusory statement is not sufficient to meet the pleading requirements. *Twombly*, 550 U.S. at 555.

Finally, "Under New York law, claims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'" *Deutsche Bank Nat. Tr. Co. v. Quicken*

*Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (quoting *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426, 894 N.Y.S.2d 47 (N.Y.App.Div.2010)). In that case, "the prima facie tort cause of action must be dismissed as duplicative." *Coscia v. El Jamal*, 156 A.D.3d 861, 864, 69 N.Y.S.3d 320 (2017); *see also Deutsche Bank Nat. Tr. Co.*, 810 F.3d at 869.

Plaintiff's alternative causes of action against Plunkett, Apple, and OIC Security are based upon the same conduct that gives rise to his negligence claim and provide a complete source of recovery for his injuries. Any further claim for negligence would be duplicative of these common law claims.

Therefore, the negligence claim is DISMISSED.

## V. Defendants Apple and OIC Security's Motion to Dismiss Plaintiff's Negligent Screening, Hiring, Training, Supervision, and Retention Claim is Granted

To state a claim for negligent screening, hiring, training, supervision or retention under New York law, "in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations omitted).

Defendants assert that the SAC fails to allege any facts tending to show that OIC Security or Apple knew or should have known that Plunkett's, or any other employee, had a propensity for the type of conduct that led to Plaintiff's injury.[2] Defendants are correct.

---

[2]     Defendants note that they dispute that Plunkett or any other employee had a propensity for violence or engaged in any wrongful conduct at the time.

The SAC alleges in conclusory fashion that Defendant Apple and Defendant OIC Security "knew or should have known in the exercise of reasonable care the propensities of defendant Plunkett and the other security guards to engage in the conduct heretofore alleged herein." SAC ¶ 118, 121. It goes on to allege that : (1) "that defendant Plunkett had an extensive history of CCRB complaints while an NYPD police officer, including but not limited to substantiated charges of discourtesy to the public and abuse of authority;" (*id.* ¶¶ 120, 123) and (2) that "Plaintiff had had a previous encounter with defendant Plunkett at the same Apple store" in which "Plunkett began to address Plaintiff in an aggressive manner." *Id.* ¶¶ 43, 121, 124.

Defendants note in response that the allegations of in the SAC concerning Plaintiff's prior encounter with Plunkett do not suggest that he had a history of either violence (the initial encounter involved no physical contact) or making false reports (there is no allegation that Plunkett made any report after the first incident). The SAC also does not allege any facts suggesting that either Apple or OIC knew or had any reason to know about the CCRB complaints. As a result, Plaintiff fails to allege facts tending to show that either OIC Security or Apple "knew or should have known of [Plunkett's] propensity for the conduct which caused the injury prior to the injury's occurrence."

Accordingly, the negligent hiring/retention/supervision claim is DISMISSED.

## VI.    Defendants Apple, OIC Security's, and Defendant Plunkett's Motion to Dismiss Plaintiff's Intentional and Negligent Infliction of Emotional Distress Claims is Granted

### i.    *Plaintiff's Intentional Infliction of Emotional Distress Claim is Dismissed*

"Under New York law, a claim of intentional infliction of emotional distress ("IIED") requires: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir.2001) (internal quotation marks omitted). To satisfy the standard for IIED, a plaintiff

must describe conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Murphy v. American Home Prod. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983) (quoting Rest. Second Torts § 46(1), comment d). IIED is a highly disfavored claim at law, so this standard is "rigorous, and difficult to satisfy." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993) (citation omitted). Of the IIED claims considered by the New York Court of Appeals, "*every one* has failed because the alleged conduct was not sufficiently outrageous." *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 57 (2016)).

The SAC alleges that Plunkett "grabbed Plaintiff's person, removed his bag from him and threw it to the ground, and then ripped Plaintiff's jacket off his body." SAC ¶ 42. Then Plaintiff alleges that unknown employees of Apple and/or OIC Security called the police "falsely reporting that Plaintiff was being verbally abusive to staff and refusing to leave the store." *Id.* ¶ 44.

While Plaintiff acknowledges that making false accusations of criminal conduct alone does not suffice to constitute outrageous behavior, (*see, e.g.*, *Hill v. City of New York*, 2006 WL 2347739, at *5 (S.D.N.Y. Aug. 14, 2006)), he argues that Defendants entire course of conduct rises to the level of outrageous conduct necessary to state an IIED claim. "The Second Circuit has suggested that sufficient additional outrageous behavior could be 'some combination' of alleged 'public humiliation, . . . verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy' with false accusations of criminal conduct." *Truman v. Brown*, 434 F. Supp. 3d 100, 120 (S.D.N.Y. 2020).

The conduct alleged fails to meet the extremely high standard established under New York law for an IIED claim. While Plunkett's conduct, if proven true, would be worthy of censure it

20

does not rise to such a level as to "go beyond all possible bounds of decency." *See Campoverde v. Sony Pictures Entertainment*, No. 01 Civ. 7775, 2002 WL 31163804 at \*11 (S.D.N.Y. Sept.30, 2002) (dismissing IIED claim where the complaint alleged that the defendants' employees were "abusive" and "threatening," "kept plaintiffs behind a shut and guarded door" while refusing to let them leave, and ultimately threw them onto the street); *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005) (collecting cases).

In addition, Plaintiff has not adequately alleged that he suffered severe emotional distress. "To qualify as severe emotional distress, the emotional distress suffered by the plaintiff must be so severe that no reasonable person could be expected to endure it." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (internal quotations omitted).

Here, the SAC alleges that "Plaintiff suffered and continues to suffer severe and permanent psychological and emotional injuries, including, but not limited to, fear and apprehension of imminent physical harm, humiliation, embarrassment, shame, bouts of screaming, and prolonged agitation." SAC ¶ 145.

Courts in this Circuit have held that "conclusory allegations that [defendant's] behavior toward Plaintiff has caused him severe emotional distress, inducing eczema, headaches, anxiety, blurred vision, among other symptoms and effects . . . are not enough." *Panchishak v. Cnty. of Rockland*, No. 20-CV-10095 (KMK), 2021 WL 4429840, at \*8 (S.D.N.Y. Sept. 27, 2021) (collecting cases). Instead, "Any allegations of suffering from severe emotional distress must be supported with objective evidence and not speculative claims." *Delaney v. Perez*, No. 19-cv-6084, 2021 WL 3038642, at \*7 (S.D.N.Y. July 16, 2021); *see also Winter v. Pinkins*, No. 14-cv-8817, 2016 WL 1023319, at \*7 (S.D.N.Y. Mar. 8, 2016) ("Plaintiff offers no facts indicating what emotional distress he suffered, how long it lasted, how severe it was, and whether he sought

21

medical treatment for the distress."). Therefore, Plaintiff's sole conclusory statement collecting symptoms is not adequate to allege severe emotional distress.

Defendants' motion to dismiss Plaintiff's IIED claim is GRANTED.

ii. *Plaintiff's Negligent Infliction of Emotional Distress Claim is Dismissed*

Plaintiff's negligent infliction of emotional distress ("NIED") claim is also dismissed.

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.,* 992 F.3d 67, 81 (2d Cir. 2021). "[G]uarantees of genuineness—generally requires a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress . . . [or] must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety." *J.H. v. Bratton*, 248 F. Supp.3d 401, 416 (E.D.N.Y. 2017) (quoting *Taggart v. Costabile*, 14 N.Y.S.3d 388, 396 (App. Div. 2015)).

As well as not adequately alleging emotional harm (*see supra* pp. 21-22), Plaintiff has not alleged a breach of duty owed to Plaintiff through any negligent conduct. A cause of action for negligent infliction of emotional distress only exists where a defendant owes a "special duty" to the plaintiff. *Cucchi v. New York City Off–Track Betting Corp.*, 818 F. Supp. 647, 656 (S.D.N.Y. 1993). The duty must be "specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. United States*, 102 F.3d 693, 693 (2d Cir.1996). As noted, Plaintiff's single conclusory statement that each Defendant owed him a duty of care is not sufficient to plead the existence of such a special duty. *See supra* p. 17.

Accordingly, Plaintiff's claim of NIED is DISMISSED.

22

## **CONCLUSION**

For the reasons discussed above, the motion to dismiss Plaintiff's claims is GRANTED.

This constitutes the decision and order of the court. It is a written opinion. The Clerk of

Court is respectfully directed to terminate the motions at Docket Numbers 28, 38, and 53.

Dated: September 11, 2023
New York, New York

U.S.D.J.

BY ECF TO ALL COUNSEL

23